# EXHIBIT A



March 10, 2015

**VIA FACSIMILE**

Department of Justice
FOIA/PA Mail Referral Unit
Room 115, LOC Building
Washington, DC 20530-0001
Fax: (301) 341-0772 fax
Email: mrufoia.requests@usdoj.gov

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843
Fax: (540) 868-4391

Office of Legal Counsel
Department of Justice
Melissa Kassier
Room 5511, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Phone: (202) 514-2053
Email: usdoj-officeoflegalcounsel@usdoj.gov

National Security Agency
NSA FOIA Requester Service Center
POC: Cindy Blacker
NSA FOIA Requester Service Center/DJ4
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax: (301) 688-4762
Email: foiarsc@nsa.gov

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

Re:     **Freedom of Information Act Request**

To whom it may concern:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 the
American Civil Liberties Union and the American Civil Liberties Union

1

Foundation (collectively "ACLU")[1] request the legal opinion from the Justice Department's Office of Legal Counsel interpreting "common commercial service agreements," as referenced in Senator Ron Wyden's letter to Attorney General Eric Holder, dated February 3, 2015.[2]

## I.   Background

On February 3, 2015, Senator Ron Wyden sent a letter to Attorney General Eric Holder requesting a legal opinion from the Justice Department's Office of Legal Counsel ("OLC") interpreting "common commercial service agreements." According to Senator Wyden, the opinion in question "is inconsistent with the public's current understanding of the law" and should be "declassified and released to the public, so that anyone who is a party to one of these agreements can consider whether their agreement should be revised or modified."[3] Senator Wyden went on to say that it would "be difficult for Congress to have a fully informed debate on cybersecurity legislation if it does not understand how these agreements have been interpreted by the Executive Branch."[4]

Senator Wyden's warning comes at a critical legislative moment. For the past few years, the executive branch—and the intelligence agencies in particular—have called for the enactment of cybersecurity legislation that would broadly immunize companies for their sharing of information with the government. Congress has considered two legislative proposals in particular—the Cyber Intelligence Sharing and Protection Act ("CISPA")[5]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] The American Civil Liberties Union is a non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil-liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union Foundation is a separate, 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil-rights and civil-liberties cases, educates the public about civil-rights and civil-liberties issues across the country, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators.

[2] Letter from U.S. Senator Ron Wyden to U.S. Att'y General Eric H. Holder, Jr. (Feb. 3, 2015), *available at* http://big.assets.huffingtonpost.com/WydenDOJ.PDF.

[3] *Id.*

[4] *Id.*

[5] Cyber Intelligence Sharing and Protection Act of 2014, H.R. 624, 113th Cong. § 1 (2014), https://www.congress.gov/bill/113th-congress/house-bill/624.

and the Cybersecurity Information Sharing Act ("CISA")[6]—which would have granted communications service providers broad legal immunity and permitted them to share their customers' sensitive information with the government.[7]

The legislative fight over cybersecurity is far from over. In his 2015 State of the Union Address, President Obama announced that he would pursue further cybersecurity legislation in the coming year.[8] Before this legislation is enacted, it is critically important that the public and Congress understand how the executive branch works within the current law to address the risks of cyberattacks.

## II.  Requested Records

The ACLU seeks disclosure of the legal opinion from the Justice Department's Office of Legal Counsel interpreting common commercial service agreements, as referenced in Senator Wyden's letter to Attorney General Holder, dated February 3, 2015.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## III. Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . . ."), and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a representative of the news media, the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

---

[6] Cybersecurity Information Sharing Act of 2014, S.2588, 113th Cong. § 1 (2014), https://www.congress.gov/bill/113th-congress/senate-bill/2588.

[7] Gregory S. McNeal, *Controversial Cybersecurity Bill Known as CISA Advances Out of Senate Committee*, Forbes, July 9, 2014, http://www.forbes.com/sites/gregorymcneal/2014/07/09/controversial-cybersecurity-bill-known-as-cisa-advances-out-of-senate-committee/

[8] Press Release, *Securing Cyberspace – President Obama Announces New Cybersecurity Legislative Proposal and Other Cybersecurity Efforts*, The White House (Jan. 13, 2015), http://www.whitehouse.gov/the-press-office/2015/01/13/securing-cyberspace-president-obama-announces-new-cybersecurity-legislat; Phillip Swarts, *Obama Budget Dedicates $14B to Cybersecurity*, Wash. Times (Feb. 2, 2015), http://www.washingtontimes.com/news/2015/feb/2/obama-budget-dedicates-14b-to-cybersecurity/.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU meets the definition of a representative of the news media because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes a continuously updated blog, newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee through its public education department and web site. The ACLU web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically features information obtained through FOIA.[9] For example, the ACLU's "Accountability for Torture FOIA" webpage[10] contains commentary about the ACLU's FOIA request for documents related to the treatment of detainees, press releases, analysis of the FOIA documents disclosed, and an advanced search engine permitting webpage visitors to search the documents obtained through the FOIA. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch to be a news-media requester because it posted documents obtained through FOIA on its website).

The ACLU maintains and publishes a widely read blog specifically dedicated to covering issues involving "civil liberties in the digital age,"[11] through which the organization disseminates news and commentary about FOIA requests similar to this one.[12] The ACLU publishes a newsletter at least twice a year that reports on and analyzes civil-liberties-related current events. The newsletter is distributed to approximately 450,000 people. The

---

[9] *See, e.g.*, https://www.aclu.org/national-security/warrantless-electronic-communications-foia-requests; https://www.aclu.org/technology-and-liberty/foia-request-justice-department-policy-memos-gps-location-tracking; http://www.aclu.org/national-security/predator-drone-foia; http://www.thetorturedatabase.org; http://www.aclu.org/mappingthefbi.

[10] https://www.aclu.org/accountability-torture

[11] https://www.aclu.org/blog/free-future.

[12] *See, e.g.*, Nathan Freed Wessler, *New Documents Suggest IRS Reads Emails Without a Warrant*, Free Future (Apr. 10, 2013), https://www.aclu.org/blog/technology-and-liberty-national-security/new-documents-suggest-irs-reads-emails-without-warrant.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

ACLU also publishes a bi-weekly electronic newsletter, which is distributed to approximately 300,000 subscribers (both ACLU members and non-members) by e-mail. Both of these newsletters often include descriptions and analyses of information obtained from the government through FOIA, as well as information about cases, governmental policies, pending legislation, abuses of constitutional rights, and polling data. *Cf. Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 13–14 (D.D.C. 2003) (finding the Electronic Privacy Information Center to be a representative of the news media under Department of Defense regulations because it published a "bi-weekly electronic newsletter that is distributed to over 15,000 readers" about "court cases and legal challenges, government policies, legislation, civil rights, surveys and polls, legislation, privacy abuses, international issues, and trends and technological advancements.").

The ACLU also regularly publishes books,[13] "know your rights" publications,[14] fact sheets,[15] and educational brochures and pamphlets designed to educate the public about civil liberties issues and governmental policies that implicate civil rights and liberties. These materials are specifically designed to be educational and widely disseminated to the public. *See Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 11 (finding the Electronic Privacy Information Center to be a news-media requester because of its publication and distribution of seven books on privacy, technology, and civil liberties).

---

[13] Some of the recent books published by the ACLU include: Susan N. Herman, *Taking Liberties: The War on Terror and the Erosion of American Democracy* (Oxford Univ. Press 2011); Lenora M. Lapidus, Emily J. Martin & Namita Luthra, *The Rights of Women: The Authoritative ACLU Guide to Women's Rights* (NYU Press 4th ed. 2009); Jameel Jaffer & Amrit Singh, *Administration of Torture: A Documentary Record from Washington to Abu Ghraib and Beyond* (Columbia Univ. Press 2007) (a book based on documents obtained through FOIA).

[14] Some of the more recent "know your rights" publications include: ACLU, *Know Your Rights: Pregnant, Post-Partum & Breastfeeding Workers* (Oct. 2013), *available at* https://www.aclu.org/files/assets/kyr_pregant_breastfeeding.pdf; ACLU, *Know Your Rights: Demonstrations and Protests* (Nov. 2011), *available at* http://www.aclu.org/files/assets/kyr_protests.pdf; ACLU, *Gender-Based Violence & Harassment: Your School, Your Rights* (May 2011), *available at* http://www.aclu.org/files/assets/genderbasedviolence_factsheet_0.pdf; ACLU, *Know Your Rights: What to Do If You're Stopped by Police, Immigration Agents or the FBI* (June 2010), *available at* http://www.aclu.org/files/assets/bustcard_eng_20100630.pdf.

[15] *See, e.g.*, ACLU, *Military Abortion Ban in Cases of Rape and Incest (Factsheet)* (2011), available at http://www.aclu.org/reproductive-freedom/military-abortion-ban-cases-rape-and-incest-factsheet; ACLU, *The Facts About "The No Taxpayer Funding For Abortion Act"* (2011), available at http://www.aclu.org/files/assets/Chris_Smith_bill-_ACLU_Fact_Sheet-_UPDATED-4-30-11.pdf.

Depending on the results of this request, the ACLU plans to "disseminate the information" it receives "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a news media entity.

Disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" (citation and internal quotations omitted)). Any information disclosed by the ACLU as a result of this FOIA will be made available to the public at no cost.

### IV. Waiver of All Costs

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."), 28 C.F.R. §§ 16.11(4)(k)(i) and 32 C.F.R. § 1900.13(b) (Records will be furnished without charge or at a reduced rate whenever the agency determines "that it is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the United States Government and is not primarily in the commercial interest of the requester.").

Disclosure of the requested information will help members of the public understand how the Executive Branch works within the current law to address the risks of cyberattacks. Cybersecurity legislation currently being considered would come at a cost to the personal privacy of all Americans. Without the information contained in the requested legal opinion, Congress will not have the information necessary to debate, enact, and evaluate the privacy concerns associated with any proposed cybersecurity legislation. The requested information will "contribute significantly to public understanding" of the Executive Branch's interpretation of common commercial service agreements that are a critical component to any such legislation.     5 U.S.C. § 552(a)(4)(A)(iii).

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section III, the ACLU is well-situated to disseminate information it gains from this request to the general public and to groups that protect constitutional rights. Because the ACLU meets the test

6

for a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[16]

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

> Alex Abdo
> ACLU
> 125 Broad St., 17th Floor
> New York, NY 10004

If you have questions, please contact me at aabdo@aclu.org or (212) 549-2517.

Sincerely,

Alex Abdo

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[16] For example, in May 2012, the Bureau of Prisons granted a fee waiver to the ACLU for a FOIA request seeking documents concerning isolated confinement of prisoners in BOP custody. In March 2012, the Department of Justice Criminal Division granted a fee waiver to the ACLU for a FOIA request seeking records about the government's access to the contents of individuals' private electronic communications. In June 2011, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request submitted in December 2008. The Department of Justice granted a fee waiver to the ACLU with regard to the same FOIA request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations.

7

# EXHIBIT B

**U.S. Department of Justice**

Office of Legal Counsel

_____

*Washington, D.C.  20530*


March 16, 2015


Alex Abdo
American Civil Liberties Union
American Civil Liberties Union Foundation
aabdo@aclu.org

      **Re:    FOIA Tracking No. FY15-041**

Dear Mr. Abdo:

     This letter responds to your March 10, 2015 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC") in which you sought "the legal opinion from [OLC] interpreting 'common commercial service agreements,' as referenced in Senator Ron Wyden's letter to Attorney General Eric Holder, dated February 3, 2015."

     Our office has located the memorandum you have requested.  We are withholding the document pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5), because it is protected by the deliberative process and attorney-client privileges.  For your information, the withheld record also is classified, and it may also be exempt under FOIA Exemption Three, *id.* § 552(b)(3).

     You have the right to file an administrative appeal.  You must submit any administrative appeal within 60 days of the date of this letter by mail to the Office of Information Policy, United States Department of Justice, 1425 New York Avenue, N.W., Suite 11050, Washington, D.C. 20530; by fax at (202) 514-1009; or through OIP's e-portal at http://www.justice.gov/oip/oip-request.html.  Both the letter and the envelope, or the fax, should be clearly marked "Freedom of Information Act Appeal."

                                  Sincerely,

                                    Paul P. Colborn
                                    Special Counsel

# EXHIBIT C



May 14, 2015

**via facsimile**

Office of Information Policy
United States Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530
Fax: (202) 514-1009

Re:   **Freedom of Information Act Appeal
FY15-041**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

To whom it may concern:

The American Civil Liberties Union writes to appeal the denial of
its Freedom of Information Act request for the Office of Legal
Counsel's legal memorandum interpreting "common commercial
service agreements," which was referred to in a letter sent by
Senator Ron Wyden to Attorney General Eric Holder on February
3, 2015. A copy of the request, dated March 10, 2015, is attached
as Exhibit A. A copy of the OLC's response, dated March 16, 2015,
is attached as Exhibit B.

The OLC located the memorandum but withheld it under FOIA
Exemption Five, 5 U.S.C. § 552(b)(5), based on its claim that the
memorandum is "protected by the deliberative process and
attorney-client privileges."

The OLC did not provide any explanation of how the document
satisfies the prerequisites of either of those privileges. There is, in
any event, a compelling reason to believe that the memorandum
at one point reflected official administration policy rather than
merely deliberative analysis or advice. In his letter to the
Attorney General, Senator Wyden describes the memorandum in
a way that suggests it reflected the administration's
"understanding of the law" and the manner in which the
administration understood its "common commercial services
agreements" with private companies. In other words, it appears
that the memorandum was operative, not merely advisory.

1

Moreover, in Senate testimony responding to questions from Senator Wyden, the deputy head of the OLC, Caroline Krass, stated that the OLC would not rely on the memorandum today, based on its age and other factors.[1] The implication of her statement is that the OLC did in fact rely upon the memorandum at one point.

In its denial, the OLC also gestured to the possibility that the memorandum is classified and perhaps withholdable under Exemptions 1 and 3. It is unclear whether the OLC has in fact invoked those exemptions. To the extent it has, we appeal those determinations as well.

Finally, even if the memorandum is technically withholdable, the agency should consider a discretionary release given the importance of the memorandum to the ongoing legislative debate about cybersecurity.

If you have questions, please contact me at aabdo@aclu.org or (212) 549-2517.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Sincerely,

Alex Abdo

---

[1] *Nomination of Caroline Diane Krass to be General Counsel of the Central Intelligence Agency: Hearing before the Senate Intelligence Committee*, 113 Cong. (2013), *available at* http://www.senate.gov/isvp/?type=live&comm=intel&filename=intel121713&stt=27:15 (1:24 - 1:25)

2