**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                Plaintiffs,

        v.

U.S. DEPARTMENT OF JUSTICE including its
components OFFICE OF LEGAL COUNSEL and
OFFICE OF INFORMATION POLICY,

                Defendants.

**15 Civ. 9002 (PKC)**

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United

States Department of Justice (the "Department") and a career member of the Senior Executive

Service.  I joined OLC in 1986, and since 1987 I have had the responsibility, among other things,

of supervising OLC's responses to requests it receives under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552.  I submit this declaration in support of the Department's Motion for

Summary Judgment in this case.  The statements that follow are based on my personal

knowledge, as well as on information provided to me by OLC attorneys and staff working under

my direction, and by others with knowledge of the document at issue in this case.

## OLC'S RESPONSIBILITIES

2.      The principal function of OLC is to assist the Attorney General in her role as legal

adviser to the President of the United States and to departments and agencies of the executive

branch.  OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the executive branch.  OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions.  OLC's legal advice and analysis may inform the decisionmaking of executive branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.

3.      Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice is generally kept confidential.  One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective.  If government agencies and OLC had to conduct deliberations with knowledge that their deliberations were open to public view, such discussions would naturally be chilled or inhibited, and the efficiency of government policy making would suffer as a result.

4.      These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decisionmaking process:  OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law.  Frequently, such issues arise in connection with highly complex and sensitive activities of the executive branch on matters that can be quite controversial.  So that executive branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC legal advice provided in the context of internal deliberations not be inhibited by concerns about public disclosure.

5.      The foregoing considerations regarding the need for confidential executive branch deliberations are particularly compelling in the context of the provision of legal advice, given the nature of the attorney-client relationship.  There is a special relationship of trust between a client

and an attorney when the one seeks and the other provides independent legal advice.  When the advice is provided in confidence, it is protected from compelled disclosure.  As the Supreme Court has observed, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It is critical to protect this relationship of trust in the governmental context, to ensure such full and frank communication between governmental attorneys and their clients, and thereby promote such broader public interests in the government's observance of law and the administration of justice.  The free and candid flow of information between agency decisionmakers and their outside legal advisers depends on the decisionmakers' confidence that the advice they receive will remain confidential.  Moreover, disclosure of legal advice may often reveal confidential communications from agency clients made for the purposes of securing advice.

6.     When requested to provide counsel on the law, OLC attorneys stand in a special relationship of trust with their agency clients.  Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, disclosure of the advice itself would be equally disruptive to that trust.  Thus, the need to protect the relationship of trust between OLC and the client seeking its legal advice provides an additional reason OLC legal advice often needs to stay confidential.

7.     The interests protected by the deliberative process and attorney-client privileges continue to apply fully to confidential OLC legal advice in circumstances where the executive

branch or one of its departments or agencies elects, in the interest of transparency, to explain publicly the executive branch's understanding of the legal basis for current or contemplated executive branch conduct.  There is a fundamental distinction between a subsequent explanation of the rationale and basis for a decision, which would not be privileged, and advice received prior to making a decision, which is privileged.  Thus, there is no disclosure of privileged legal advice, and therefore no waiver of attorney-client privilege, when, as part of explaining the rationale for its actions or policies, the executive branch explains its understanding of their legal basis without reference to any confidential legal advice that executive branch decisionmakers may have received before deciding to take the action or adopt the policy.  Likewise, confidential advice does not lose the protection of the deliberative process privilege simply because the executive branch explains the basis or rationale for its actions or policies without referring to that advice; rather, confidential deliberative advice loses this protection only through adoption, *i.e.*, if the advice is expressly adopted as part of the explanation of the rationale for the decision or waiver, *i.e.*, through specific voluntary disclosure of the deliberative material.  If merely explaining publicly the legal basis for executive branch conduct were understood to remove the protection of the deliberative process and attorney-client privileges from the confidential legal advice provided as part of the executive branch's internal deliberations, it would substantially harm the ability of executive branch decisionmakers to request, receive, and rely upon full and frank legal advice from government lawyers as part of the decisionmaking process, and it would also harm the public by discouraging the executive branch from explaining its understanding of the legal basis for its actions publicly in the future.

## PLAINTIFFS' FOIA REQUEST

8.      On March 10, 2015, OLC received a request dated the same day from Alex Abdo

on behalf of the American Civil Liberties Union Foundation (together with the American Civil

Liberties Union, hereinafter the "ACLU"), requesting a single document.  *See* Ex. A, at 1 (FOIA

Request (March 10, 2015)) (hereinafter, "the ACLU Request").  The document was described as

follows:

> The ACLU seeks disclosure of the legal opinion from the Justice Department's Office of
> Legal Counsel interpreting common commercial service agreements, as referenced in
> Senator Wyden's letter to Attorney General Holder, dated February 3, 2015.

*Id.* at 3.

9.      By letter dated March 16, 2015 and transmitted by email on March 17, 2015, I

responded to Mr. Abdo on behalf of OLC, acknowledging receipt of the ACLU Request and

informing him that the requested memorandum had been located.  *See* Ex. B, at 1 (OLC

Response (March 16, 2015)).  I further informed him that the document was protected by the

deliberative process and attorney-client privileges, and accordingly OLC was withholding the

document pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5).  *Id.*  I also informed Mr.

Abdo that the document is marked classified—making it potentially exempt from disclosure

under FOIA Exemption One, 5 U.S.C. § 552(b)(1)—and may also be exempt from disclosure

under FOIA Exemption Three, 5 U.S.C. § 552(b)(3).  *Id.*

10.      OLC's records indicate that Mr. Abdo appealed OLC's withholding determination

on May 14, 2015, to the Department's Office of Information Policy ("OIP"), the component

charged with considering such appeals.  *See* Ex. C (ACLU Appeal (May 14, 2015)).  ACLU filed

this lawsuit on November 17, 2015, and OIP informed Mr. Abdo by letter dated December 7,

2015, that it would not make a determination on the appeal in light of the pending litigation, pursuant to Department regulations.  *See* Ex. D (OIP Response (December 7, 2015)).

## DOCUMENT AT ISSUE

11.     I am personally familiar with the withheld document issue in this case.

12.     The withheld document is a 19-page OLC legal advice memorandum to the General Counsel of an executive branch agency, drafted at the request of the General Counsel, dated March 30, 2003 and signed by OLC Deputy Assistant Attorney General John Yoo.  The memorandum was written in response to confidential communications from an executive branch client soliciting legal advice from OLC attorneys.  As with all such OLC legal advice memoranda, the document contains confidential client communications made for the purpose of seeking legal advice and predecisional legal advice from OLC attorneys transmitted to an executive branch client as part of government deliberative processes.  In light of the fact that the document's general subject matter is publicly known, the identity of the recipient agency is itself confidential client information protected by the attorney-client privilege.

13.     Less than a year prior to OLC's response to the ACLU Request, the Department's withholding of this document from the ACLU in response to a different FOIA request was upheld after *in camera* review of the document by the United States District Court for the District of Columbia.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, Nos. 06- 096, 06-214 (RCL), 2014 WL 1279280 (D.D.C. Mar. 31, 2014) ("*EPIC*"); *see also* Ex. E (Second Redacted Bradbury Declaration, ECF No. 35-1, No. 06-214 (Filed Oct. 19, 2007) (describing this and other documents)) ("Bradbury *EPIC* Declaration")).  The document was identified in that case as ODAG 42.  *See* Bradbury *EPIC* Declaration ¶ 98.  The document was among the ten OLC opinions reviewed *in camera*, *see* Order, ECF No. 67, No. 06-096 (Filed Oct. 31, 2008)

(identifying ODAG 42 as one of ten documents ordered for *in camera* review), and determined to be properly withheld from disclosure to the ACLU pursuant to Exemptions One, Three, and Five. *EPIC*, 2014 WL 1279280, at *1 ("The Court is now satisfied with the Department's decisions to withhold these ten records under Exemptions One and Three, since they are in fact properly classified, as well as Exemption Five as each record contains confidential, pre-decisional legal advice protected by the deliberative-process and attorney-client communications privileges.").

## APPLICABLE EXEMPTIONS

### *Withholding Pursuant to Exemption Five*

14.     The withheld record is a memorandum authored by OLC containing OLC's confidential, predecisional legal advice to assist an Executive Branch client in making policy decisions.  Accordingly, the record is covered by the deliberative process and attorney-client privileges, and therefore is exempt under FOIA Exemption Five, unless those privileges have been lost by waiver or adoption.

15.     The deliberative process privilege protects documents that are (a) predecisional, in that they were generated prior to decisions or potential decisions; and (b) deliberative, in that they contain, reflect, or reveal advice, discussions, proposals, and the exchanges that characterize the government's deliberative processes.

16.     The withheld memorandum is protected by the deliberative process privilege because it is confidential, pre-decisional, and deliberative.  As legal advice, the memorandum is (a) pre-decisional, *i.e.*, prepared in advance of Executive Branch decisionmaking; and (b) deliberative, *i.e.*, contains advice by OLC attorneys to other Executive Branch officials in connection with that decisionmaking.  Consequently, the document falls squarely within the

protection of the deliberative process privilege.  Requiring disclosure of documents of this sort would undermine the deliberative processes of the government and chill the candid and frank communications necessary for effective governmental decisionmaking.  It is essential to OLC's mission and the deliberative processes of the Executive Branch that OLC's provision of candid and complete legal advice not be inhibited by concerns about compelled public disclosure. Protecting such legal advice from compelled disclosure is also central to ensuring that Executive Branch officials will seek legal advice from OLC and the Department of Justice on sensitive matters.

17.     The attorney-client privilege protects documents that contain or reflect confidential legal advice provided by an attorney to a client, and confidential client requests for legal advice and other confidential communications and facts conveyed by the client to the attorney for the purpose of receiving legal advice.

18.     The withheld document is protected by the attorney-client privilege.  The responsive document (a) contains confidential legal advice provided to OLC's Executive Branch client; and (b) reflects confidential communications between OLC and its Executive Branch client made for the purpose of seeking and providing that legal advice.  Moreover, the existence of such a confidential legal advice document reflects the privileged fact that a client requested confidential legal advice on a particular subject.  The document thus falls squarely within the attorney-client privilege.  Having been asked to provide legal advice, OLC attorneys stood in a relationship of trust with their Executive Branch client.  Just as disclosure of client confidences provided in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice for their clients, so too would disclosure of the legal advice itself undermine that trust.

*Withholding Pursuant to Exemptions One and Three*

19.     In connection with seeking advice from OLC, OLC's Executive Branch clients sometimes provide OLC with classified information or other information specifically protected from disclosure under FOIA by statute.  OLC does not have original classification authority, but when it receives or makes use of classified information provided to it by its clients, OLC is required to mark and treat that information as derivatively classified to the same extent as its clients have identified such information as classified. Accordingly, all classified information in OLC's possession or incorporated into its products has been classified by another agency or component with original classifying authority.

20.     The document at issue in this case is marked as classified because it contains information OLC received from another agency that was marked as classified.  OLC has also been informed by the relevant agency that information contained in the document is protected from disclosure under FOIA by statute.

21.     Accordingly, OLC is also withholding the document pursuant to Exemptions One and Three.  Exemption One, 5 U.S.C. § 552(b)(1), exempts documents classified in the interest of national defense or foreign policy pursuant to an Executive Order from disclosure under FOIA.  Exemption Three, 5 U.S.C. § 552(b)(3), exempts documents "specifically exempted from disclosure by statute" from disclosure under FOIA.  The application of these exemptions to the document is addressed in the other declaration filed in connection with this motion.

*Segregability, Adoption, and Waiver*

22.     I have personally reviewed the document to determine whether any withheld portion or portions could be released without divulging information protected by one or more of

the applicable FOIA exemptions.  The document does not contain reasonably segregable, nonexempt information.

23.     To my knowledge, the document has never been publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision.

24.     To my knowledge, the document has not been previously disclosed publicly.  In addition, I am not aware of any public statements by government officials that could constitute waiver of the privileges applicable to the document.

### *Discretionary Release*

25.     The document is not appropriate for discretionary release.

* * * * * * *

26.     In conclusion, I respectfully submit that the document described herein is covered by the deliberative process and attorney-client privileges.  Accordingly, the withheld document falls squarely within Exemption Five.  The compelled disclosure of this document would harm the deliberative processes of the government and would disrupt the attorney-client relationship between OLC and its clients throughout the Executive Branch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 7, 2016, Washington, D.C.

PAUL P. COLBORN