UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION *et al.*,<br><br>           Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE et al.,<br><br>           Defendants. | 15 Civ. 9002 (PKC) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney
Southern District of New York
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007

      Arastu K. Chaudhury
Assistant United States Attorney
          Of Counsel

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. The OLC Memorandum Is Not "Working Law" ...................................................................2

    A. Legal Advice Is Not "Working Law" ..............................................................................3

    B. An Agency's Reliance on Legal Advice Does Not Transform the Advice Into
       "Working Law" ...............................................................................................................5

II. Plaintiffs' Claim Is Barred by *Res Judicata* .........................................................................9

    A. Plaintiffs Had a Full and Fair Opportunity to, and in Fact Did, Litigate the
       "Working Law" Issue in EPIC .....................................................................................10

    B. Plaintiffs Cannot Show New Facts or Changed Circumstances Relevant to the *Res
       Judicata* Analysis ..........................................................................................................11

III. The Government's Declarations Are More Than Sufficient to Satisfy the
     Government's Burden ........................................................................................................12

CONCLUSION ..............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Office of the Dir. of Nat'l Intelligence*,
  No. 10 Civ. 4419 (RJS), 2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011) ........................ 13

*ACLU v. DOJ*,
  321 F. Supp. 2d 24 (D.D.C. 2004) ................................................................... 9, 11

*ACLU v. DOJ*,
  681 F.3d 61 (2d Cir. 2012)................................................................................ 13-14

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) ............................................................................ 3

*Ass'n of Am. Physicians & Surgeons v. Clinton*,
  997 F.2d 898 (D.C. Cir. 1993) .............................................................................. 7

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. DOJ*,
  697 F.3d 184 (2d Cir. 2012)......................................................................... 3, 4, 6

*Citizens for Responsibility & Ethics v. Office of Admin.*,
  249 F.R.D. 1 (D.D.C. 2008)................................................................................. 7

*Coastal States Gas v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980).............................................................................. 4

*Croskey v. U.S. Office of Special Counsel*,
  No. 96-5114, 1997 WL 702364 (D.C. Cir. Oct. 17, 1997) ............................... 11

*Crowell v. Benson*,
  285 U.S. 22 (1932)................................................................................................ 8

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003)..............................................................................14

*DOJ v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ............................................................................................. 3

*Drake v. FAA*,
  291 F.3d 59 (D.C. Cir. 2002) ............................................................................. 11

*Elec. Frontier Found. v. U.S. DOJ*,
  739 F.3d 1 (D.C. Cir. 2014) ......................................................................... 3, 5, 6

*Elec. Privacy Info. Ctr. v. DOJ*,
	584 F. Supp. 2d 65 (D.D.C. 2008) .................................................................................. 7, 10

*Elec. Privacy Info. Ctr. v. DOJ*,
	Nos. 06-096, 06-214 (RCL), 2014 WL 1279280 (D.D.C. Mar. 31, 2014) .................. 2, 10

*Hayden v. NSA*,
	608 F.2d 1381 (D.C. Cir. 1979) ...........................................................................................13

*In re Erie County*,
	473 F.3d 413 (2d Cir. 2007) ................................................................................................. 7

*N.H. Right to Life v. U.S. HHS*,
	778 F.3d 43 (1st Cir. 2015) .................................................................................................. 7

*New York Times Co. v. DOJ*,
	758 F.3d 436 (2d Cir. 2014) ............................................................................................... 13

*New York Times Co. v. DOJ*,
	806 F.3d 682 (2d Cir. 2015) ..................................................................................... *passim*

*NLRB v. Sears, Roebuck, & Co.*,
	421 U.S. 132 (1975) .............................................................................................................. 3

*Nat'l Council of La Raza v. DOJ*,
	411 F.3d 350 (2d Cir. 2005) ............................................................................................ 4, 6

*Negley v. FBI*,
	589 F. App'x 726 (5th Cir. 2014) ....................................................................................... 11

*Negley v. FBI*,
	169 F. App'x 591 (D.C. Cir. 2006) .................................................................................... 11

*Primorac v. CIA*,
	277 F. Supp. 2d 117 (D.D.C. 2003) .................................................................................. 11

*Pub. Citizen v. U.S. Dep't of Justice*,
	491 U.S. 440 (1989) ............................................................................................................. 8

*Pub. Citizen v. OMB*,
	598 F.3d 865 (D.C. Cir. 2010) ............................................................................................. 4

*Tax Analysts v. IRS*,
	294 F.3d 71 (D.C. Cir. 2002) ............................................................................................... 4

*United States v. Nixon*,
    418 U.S. 683 (1974) .................................................................................................. 7

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) ......................................................................................12

*Wolfe v. Froehlke*,
    358 F. Supp. 1318 (D.D.C. 1973) ........................................................................... 11

*Wood v. FBI*,
    432 F.3d 78 (2d Cir. 2005) .................................................................................. 4, 6

**Federal Statutes**

5 U.S.C. § 552(a)(2) ............................................................................................................ 8

Defendants the Department of Justice and its components Office of Legal Counsel and Office of Information Policy (collectively, "DOJ," the "Department," or the "Government")[1] respectfully submits this memorandum of law in further support of its motion for summary judgment, in opposition to Plaintiffs' cross-motion for summary judgment, and in response to the brief filed by *amicus curiae* Senator Ron Wyden.

## PRELIMINARY STATEMENT

The principal argument advanced by Plaintiffs and *amicus curiae* Senator Wyden is squarely foreclosed by Second Circuit precedent. They argue that the OLC opinion at issue must be disclosed as "working law" because, they claim, an agency acted in a manner that was consistent with the legal advice provided in the opinion, and thus, in their view, "relied" on the the opinion. But the Second Circuit unequivocally rejected that argument in another FOIA case brought by the ACLU, *see New York Times v. DOJ*, 806 F.3d 682, 687 (2d Cir. 2015), and then denied the ACLU's petition for rehearing on this very point.[2] In *New York Times*, the Second Circuit held that OLC memoranda providing legal advice to an executive branch client are *not* "working law," even if the client agency elects to take the action that OLC has opined would be lawful. For the same reason, Senator Wyden's claim that the Government's motion papers in this case contained a "key assertion" that is "inaccurate" is wholly erroneous and based on a

---

[1] Capitalized terms not defined in this reply memorandum of law are defined in the Government's Memorandum of Law in Support of Its Motion for Summary Judgment ("Govt.'s Brief").

[2] Although captioned *New York Times Co. v. DOJ*, the appeal involved consolidated FOIA actions brought by the New York Times and ACLU. 806 F.3d at 682. Senator Wyden submitted his legal theories on "working law" to the Second Circuit in that appeal as well. *See* Decl. of Arastu K. Chaudhury ("Chaudhury Decl.") Exh. C (*New York Times Co. v. DOJ*, Nos. 14-4432, 14-4764, Dkt. 73 (2d Cir. filed Feb. 18, 2015 (Brief of *Amici Curiae* Senators Ron Wyden, Rand Paul, Jeff Merkley, and Martin Heinrich)) at 20-22.

fundamental misunderstanding of the law. The mere fact that an agency may have "relied" on legal advice in deciding whether or not to take a contemplated policy action does not transform the advice into "working law." Plaintiffs' argument to the contrary raises significant constitutional concerns regarding the ability of Executive Branch decisionmakers to receive confidential legal advice and the ability of the President to meet his constitutional duty to take care that the laws be faithfully executed by executive branch agencies.

Plaintiffs' action is also barred by principles of *res judicata*, as ACLU had a full and fair opportunity to litigate the withholding of the OLC opinion at issue in its prior litigation in *EPIC v. DOJ*, Nos. 06-096, 06-214 (RCL), 2014 WL 1279280 (D.D.C. Mar. 31, 2014). Indeed, the ACLU made substantially the same "working law" argument in *EPIC* that it makes here, and the *EPIC* court correctly rejected it. Senator Wyden's later statements regarding the document provide no basis for the ACLU to relitigate that (or any other) issue in this case. The Court accordingly should grant the Government's motion for summary judgment and deny the Plaintiffs' cross-motion.

## ARGUMENT

Plaintiffs argue that the OLC opinion at issue in this case is "working law," that the case is not barred by *res judicata* because Plaintiffs supposedly have "new evidence" that permits them to make an argument they did not raise in the *EPIC* litigation, and that the Department has not sufficiently justified its assertion of FOIA Exemptions 1, 3 and 5. In each case, Plaintiffs are wrong.

**I.     The OLC Memorandum Is Not "Working Law"**

Plaintiffs' main argument is that the OLC memorandum must be disclosed as "working law" because, they claim, an agency acted in a manner that was consistent with the legal advice

in the memorandum, and thus, in their view, "relied" on the opinion. *See* Plaintiffs' Mem. of Law ("Pls.' Opp.") at 7-11. They cite statements by Senator Wyden in support of this claim. *Id.*; *see also* Brief for Senator Ron Wyden as *Amicus* Curiae in Support of Plaintiffs ("*Amicus* Brief") at 1-2, 4.[3] Plaintiffs and Senator Wyden fail to acknowledge, however, that both the Second Circuit and the D.C. Circuit have rejected this precise argument, and held that an OLC memorandum that provides legal advice to an executive branch agency is *not* "working law." *See New York Times Co.*, 806 F.3d 682, 687 (2d Cir. 2015), *rehr'g en banc denied* (2d Cir. Mar. 31, 2016); *Brennan Center v. DOJ*, 697 F.3d 184, 203 (2d Cir. 2012); *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 10 (D.C. Cir. 2014) ("*EFF*").

**A. Legal Advice Is Not "Working Law"**

Documents are "working law" if they are "properly characterized as an 'opinion or interpretation which embodies the agency's effective law and policy.'" *Brennan Center*, 697 F.3d at 195 (quoting *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 153 (1975)). "Working law" refers to "those policies or rules, and the interpretations thereof, that either create or determine the extent of the substantive rights and liabilities of a person." *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (quotation marks omitted). The concept of "working law" derives from FOIA's affirmative requirement that agencies must disclose "rules governing relationships with private parties and . . . demands on private conduct." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989) (quotation marks omitted); *accord Brennan Center*, 697 F.3d at 201-02.

---

[3] Senator Wyden asks the Court to review a classified attachment to a letter he sent Attorney General Loretta Lynch in support of his claim that a "key assertion" in the Government's motion papers is "inaccurate." *Amicus* Br. at 4. The Government will make the classified attachment available for the Court's review *ex parte* and *in camera*. For the reasons explained in this memorandum, however, the Senator's claim of inaccuracy is based not on any inaccurate or incomplete facts, but rather on a fundamental misunderstanding of the "working law" doctrine.

3

Examples of "working law" include "memoranda from regional counsel to auditors working in [an agency's] field offices," *Brennan Center*, 697 F.3d at 200 (quoting *Coastal States Gas v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980)), "formal or informal policy on how [an agency] carries out its responsibilities' [that are] referred to as precedent, and not part of an ongoing deliberative process," *id.* at 201 (quoting *Pub. Citizen v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010)), or records that "explain[] and appl[y] established policy" in terms that reflect the agency's adopted positions and represent "[the agency's] final *legal* position," *id.* (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 81 (D.C. Cir. 2002); emphasis in *Tax Analysts*).

By contrast, OLC legal advice memoranda do not constitute "working law." Such memoranda provide "legal advice as to what a department or agency 'is *permitted* to do,' but OLC '[does] not have the authority to establish the 'working law' of the agency,' and its advice 'is not the law of an agency unless the agency adopts it.'"[4] *New York Times*, 806 F.3d at 687 (quoting *EFF*, 739 F.3d at 10) (emphasis in original; internal citations and alterations omitted); *accord Brennan Center*, 697 F.3d at 203 ("The [OLC] Memorandum does not constitute working law, or the agency's effective law and policy." (quotations omitted)); *see also EFF*, 739 F.3d at 8 ("legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy" are not "working law" (emphasis in original)).

Plaintiffs nonetheless argue that OLC memoranda must be disclosed as "working law" when they "determine policy," Pls.' Opp.at 11, which in their view would be always, since "OLC

---

[4] Plaintiffs do not contend, nor could they, that any agency has expressly adopted the OLC memorandum as agency policy. There has been no public statement by any Executive Branch official adopting both the reasoning and conclusions of the memorandum as agency policy, nor do Plaintiffs point to anything that could support a conclusion that an agency has adopted both the reasoning and conclusion of the opinion. *See Brennan Center*, 697 F.3d at 206; *Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005); *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 358-59 (2d Cir. 2005).

4

opinions are, by their nature, controlling, and, as such, constitute working law whether or not executive agents take or forego actions based on the opinions' conclusions," *id.* at 11 n.7. The problem with this argument is that it was unequivocally rejected by the Second Circuit in *New York Times*, 806 F.3d at 687. In that case, the ACLU argued, just as it argues here, that OLC opinions are "binding" on executive branch agencies, since agencies do not take actions that OLC has deemed unlawful. *See* Chaudhury Decl. Exh. B (*New York Times Co. v. DOJ*, Nos. 14-4432, 14-4764 (2d Cir.), Dkt. 45 (Br. for Pls.-Appellants ACLU)) at 28-35; Exh. D (Dkt. 98 (Reply Br. for Pls.-Appellants ACLU)) at 5-11. The Second Circuit disagreed, holding that OLC opinions are not "working law," as OLC does not have authority to determine policy, but only provides "legal advice as to what a department or agency is *permitted* to do." *New York Times*, 806 F.3d at 687 (citations, quotation marks and alterations omitted). Moreover, the ACLU sought panel rehearing and rehearing *en banc* on this very issue, making many of the same arguments that it makes here. *See* Chaudhury Decl. Exh. E (Dkt. 141 (Petition for Panel Rehearing or Rehearing En Banc)). Rehearing was denied before ACLU filed its opposition here. *See id.* Exh. F (Dkt. 146 (Order Denying Rehearing)).

**B. An Agency's Reliance on Legal Advice Does Not Transform the Advice Into "Working Law"**

Plaintiffs attempt to circumvent this controlling precedent by arguing that "[e]ssential to the D.C. Circuit's decision in *EFF* was the fact that the FBI did not 'rely' on the OLC's opinion," and that Plaintiffs have evidence that the agency "actually relied upon [the OLC advice] as a basis for executive branch policy or action." Pls.' Opp. at 11. However, the ACLU made the same argument in *New York Times*, *see* Chaudhury Decl. Exh. B at 28-35, Exh. C at 5-11, and the Second Circuit nevertheless held that the OLC memoranda in that case were not "working law," *New York Times*, 806 F.3d at 687. There was no evidence in *New York Times*

(unlike in *EFF*) that the client agencies disagreed with or eschewed reliance on the OLC memoranda.  *See id*.

Plaintiffs also misunderstand the court's holding in *EFF*.  The *EFF* court held that an OLC opinion that provided legal advice to the FBI did not constitute "working law" because the "FBI was free to decline to adopt the investigative tactics deemed legally permissible in the OLC Opinion," and the opinion did "not provide an authoritative statement of the FBI's policy.  It merely examine[d] policy options available to the FBI."  *EFF*, 739 F.3d at 10.  What mattered to the "working law" analysis in *EFF* was not whether or not the FBI "relied" on the advice in the OLC memorandum, but whether the FBI was bound by the legal advice to take a particular course of action.  *See id.*  Because the FBI was free to proceed or not with actions "deemed legally permissible" by OLC, the opinion was not "working law."  *Id.*

The mere fact that an agency "relies" on an OLC legal advice memorandum, by acting in a manner that is consistent with the advice, Pls.' Opp. at 11, does not make it "working law."  OLC memoranda fundamentally lack the essential ingredient of "working law": they do not establish agency policy.  *See New York Times*, 806 F.3d at 687; *Brennan Center*, 697 F.3d at 203; *EFF*, 739 F.3d at 10.  It is the agency, and not OLC (or any other legal adviser), that has the authority to establish agency policy.  If OLC advises that a contemplated policy action is lawful, and the agency considers the opinion and elects to take the action, that does not mean that the advice becomes the policy of that agency.  It remains legal *advice*.[5]

---

[5] Nor could the fact that any agency elects to engage in conduct consistent with what an OLC opinion has advised is lawful possibly constitute adoption of that legal advice, because taking such action does not show the requisite express adoption of both the reasoning and conclusion of OLC's legal advice.  *See Brennan Center*, 697 F.3d at 206; *Wood*, 432 F.3d at 84; *La Raza*, 411 F.3d at 358.

Furthermore, it is hardly unusual for agencies to seek (and rely on) advice from legal counsel before making a decision or taking an action – indeed, that is the very purpose of legal advice. *See New Hampshire Right to Life v. U.S. Dep't of Health and Human Servs.*, 778 F.3d 43, 54 (1st Cir. 2015). If every piece of legal advice that an agency relied on (or acted in a manner consistent with) transformed the advice into "working law," then it would become impossible for agencies to receive and rely on confidential legal advice. *See, e.g., EPIC*, 584 F. Supp. 2d 65, 75-76 (D.D.C. 2008) ("If legal opinions are disclosable simply because they are authoritative or conclusive, this would mean that virtually all legal advice OLC provides to the executive branch would be subject to disclosure." (internal quotation marks omitted)); *CREW v. Office of Admin.*, 249 F.R.D. 1, 6 (D.D.C. 2008) (same). Such a result would have significant adverse consequences for the rule of law; as the Second Circuit has recognized, it is essential that government officials be able to seek and receive confidential legal advice to ensure that their contemplated policy actions are lawful. *In re Erie County*, 473 F.3d 413, 422 (2d Cir. 2007).

Indeed, if Plaintiffs were correct and government officials were not able to seek and receive confidential legal advice prior to setting policy, that would have significant constitutional implications. Courts have consistently recognized that, for a President to effectively execute his duties, he must be able to obtain confidential and candid legal advice. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 705-06 (1974) (discussing the President's need for confidentiality "in the exercise of Art. II powers" and noting that "the importance of this confidentiality is too plain to require further discussion"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) ("The ability to discuss matters confidentially is surely an important condition to the exercise of executive power. Without it, the President's performance of any of his duties—textually explicit or implicit in Article II's grant of executive power—would be made

7

more difficult."). The ACLU's theory, that no legal advice within the executive branch may be kept confidential if its recipient "relies" on it, would not only prevent the President himself from receiving such advice—thus interfering with his authority under the Opinions Clause, in addition to the execution of his Article II duties—but also interfere with the President's discharge of his constitutional obligation to take care that agencies faithfully execute the laws, including by ensuring that those agencies may receive confidential legal advice directly, to inform both their decisionmaking processes and their ability to faithfully execute the law.[6]

Finally, the purported evidence that Plaintiffs proffer in support of their "working law" argument only confirms that the OLC memorandum is in fact advisory, deliberative, and not "working law."[7] Plaintiffs rely on a strained analysis of Senator Wyden's statements to argue that agencies have relied on the memorandum in the past, do not now rely on the memorandum, but may be "tempted to rely on it in the future." Pls.' Opp. at 9 (citing Sweren-Becker Decl. Exh. K) (internal quotation marks omitted). But that assertion only underscores that the OLC memorandum did *not* prescribe a course of action that any agency was obliged to take, and therefore did not establish agency policy.

---

[6] As noted above, the concept of "working law" derives from the affirmative disclosure provisions of the FOIA, appearing at 5 U.S.C. § 552(a)(2). In similar circumstances, the Supreme Court has construed statutes in a manner that avoided such constitutional problems. *See Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 465-68 (1989) (construing Federal Advisory Committee Act (FACA) so as to avoid encroaching on President's Article II authority) (citing, *inter alia*, *Crowell v. Benson*, 285 U.S. 22, 62 (1932)); *see also id.* at 488-89 (Kennedy, J., concurring) (concluding that FACA was unconstitutional as applied, because "[t]he mere fact that FACA would regulate so as to interfere with the manner in which the President obtains information necessary to discharge his duty assigned under the Constitution to nominate federal judges is enough to invalidate the Act").

[7] Plaintiffs conclude that the OLC memorandum at issue here must relate to the Terrorist Surveillance Program and the reauthorization of that program because the attorney who authored the memorandum also authored memoranda on the Terrorist Surveillance Program. Pls.' Opp. at 10. The fact that two OLC memoranda share an author of course establishes nothing about the documents' contents, nature, purpose, or effect.

The statements made in 2013 by Caroline Krass, then-Principal Deputy Assistant Attorney General for OLC, testifying in her personal capacity as nominee at her confirmation hearing to be the CIA General Counsel, *see* Pls.' Opp. at 7, 10 n. 6, similarly show that the OLC memorandum does not establish agency policy. Ms. Krass testified that, if confirmed, she would not rely on the opinion, she described the circumstances under which an OLC opinion might be withdrawn, and she explained that if the Senator had concerns, one possible approach to address those concerns would be to ask the relevant agencies not to rely on the OLC memorandum. *Nomination Hearing of Caroline Diane Krass Before the Senate Intelligence Committee*, 113 Cong. (2013), available at http://1.usa.gov/1M71FiE (1:24–1:28). Far from showing that the OLC memorandum fixed the policy of any agency, these statements too only highlight its advisory nature.

In sum, the OLC memorandum provides legal advice to an executive branch agency; it is not "working law." Plaintiffs' and Senator Wyden's argument to the contrary are inconsistent with Second Circuit precedent, and must be rejected.

## II.     Plaintiffs' Claim Is Barred by *Res Judicata*

Successive FOIA suits by the same plaintiff and covering the same document are barred by *res judicata* unless they are based on facts not yet in existence at the time of the original action or changed circumstances have altered the legal issues involved. *ACLU v. DOJ*, 321 F. Supp. 2d 24, 34 (D.D.C. 2004). Plaintiffs argue that because they now link Senator Wyden's statements to the OLC memorandum, they can make a "working law" argument that was unavailable to them in the *EPIC* litigation. But Plaintiffs made substantially the same "working law" arguments in *EPIC* as they do now, and Senator Wyden's statements do not present any new facts or changed circumstances sufficient to avoid *res judicata*.

### A. Plaintiffs Had a Full and Fair Opportunity to, and in Fact Did, Litigate the "Working Law" Issue in *EPIC*

Plaintiffs erroneously claim they did not have a full and fair opportunity to make their "working law" argument in the *EPIC* litigation. In fact, Plaintiffs made substantially the same arguments in their cross-motion for summary judgment in *EPIC* that they make now. *See* Chaudhury Decl. Exh. A (*EPIC v. DOJ*, Nos. 06-096, 06-214 (RCL), Dkt. 58 (D.D.C. filed Dec. 18, 2007) (Mem. in Opp. to Def.s' Renewed Mot. for Summ. J. and in Supp. of Pls.' Renewed Cross-Mot. for *In Camera* Review)) at 18. Plaintiffs argued in *EPIC* that Exemption 5 "does not apply, even to legal interpretations not considered formally 'binding' on agency employees, if . . . in practice the advice constituted policy adopted and consistently applied by the agency," *id.* at 18, and noted that their arguments concerned "[d]isclosure of working law of the agency," *id.* at 18 n.16.

The *EPIC* court's decision resolving the ACLU's motion, moreover, contained an extensive discussion of the "working law" arguments presented by Plaintiffs, specifically addressed whether the OLC opinion at issue here was the type of document that had to be disclosed as secret law, and considered whether agencies had adopted the OLC memorandum by relying on it. *EPIC*, 584 F. Supp. 2d at 75-78. The *EPIC* court also granted Plaintiffs' request that the court review the documents, including the OLC opinion at issue here, *in camera*. *See id.* at 82-83. After *in camera* review of the OLC memorandum, among other documents at issue in that case, the *EPIC* court upheld the Government's assertion of Exemptions 1, 3 and 5 to protect the memorandum in full. *EPIC*, 2014 WL 1279280, at *1.

Thus, Plaintiffs not only had a full and fair opportunity to litigate the "working law" issue, they availed themselves of that opportunity. They accordingly are barred by *res judicata* from relitigating the issue before this Court.

### B. Plaintiffs Cannot Show New Facts or Changed Circumstances Relevant to the *Res Judicata* Analysis

For purposes of *res judicata* analysis in a FOIA case, new facts generally concern documents that were not in existence at the time of the original suit. *See, e.g., Negley v. FBI*, 589 F. App'x 726, 729 (5th Cir. 2014) (successive FOIA suit seeking documents through 2009 not precluded by earlier suit seeking documents through 2002); *Negley v. FBI*, 169 F. App'x 591, 593-94 (D.C. Cir 2006) ("A lawsuit aimed at obtaining FBI records stored in Sacramento as of October 7, 1999, does not involve the same 'nucleus of facts' as a lawsuit aimed at obtaining FBI records stored in San Francisco as of January 16, 2002."); *see also* Govt.'s Br. at 6-7 (citing *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002); *Croskey v. United States Office of Special Counsel*, No. 96-5114, 1997 WL 702364, at *3 (D.C. Cir. Oct. 17, 1997)).  At the very least, the new facts must materially affect the nature of the responsive documents. *See Drake*, 291 F.3d at 66. "Changed circumstances" relevant to the *res judicata* analysis exist when the Executive Branch alters its position vis-à-vis the documents at issue, *e.g.*, when it declassifies them. *See* Govt.'s Br. at 7 (*See ACLU*, 321 F. Supp. 2d at 34; *Wolfe v. Froehlke*, 358 F. Supp. 1318, 1319 (D.D.C. 1973), *aff'd*, 510 F.2d 654 (D.C. Cir. 1974); and *Primorac v. CIA*, 277 F. Supp. 2d 117, 120 (D.D.C. 2003)).

Plaintiffs cannot show either new facts or changed circumstances here. Plaintiffs seek only one document, and it is the same document they sought, unsuccessfully, in the *EPIC* litigation. *See* Colborn Decl. ¶¶ 18, 25, 26. The Government's position with respect to the document has not changed: in this case, as in *EPIC*, the document has been withheld in full under Exemptions 1, 3 and 5. *See id.*

Nor do Senator Wyden's statements present new facts or changed circumstances. As explained above, Senator Wyden's statements do not undermine the applicability of Exemption 5

to the document. Even taking as true the allegation that one or more executive branch agencies relied on the legal advice in the OLC memorandum and acted in a manner that was consistent with that advice, that would not render the memorandum "working law." *See supra* Part I. Moreover, the memorandum is also withheld in full under Exemptions 1 and 3. "Working law" concerns whether a document is properly withheld under Exemption 5; it has no bearing on the analysis under Exemptions 1 or 3. *See New York Times*, 806 F.3d at 687.

### III. The Government's Declarations Are More Than Sufficient to Satisfy the Government's Burden

Finally, the declarations submitted by the Government, including the classified declaration submitted for the Court's review *ex parte* and *in camera*, easily satisfy the Government's burden to logically and plausibly explain why the OLC memorandum is exempt from disclosure in full under FOIA Exemptions 1, 3 and 5. *See Wilner v. NSA*, 592 F.3d 60, 75 (2d Cir. 2009).

Plaintiffs argue that the Government's public declaration does not sufficiently support the assertion of the deliberative process and attorney-client privileges. Pls.' Opp. at 12. They contend that the Government has failed to establish that the document is deliberative and predecisional because it has not identified for whom the document was produced, how it was used, or what type of predecisional document it is. *Id.* at 13-14. Plaintiffs also maintain that the Government has not established that the predominant purpose of the communication between OLC and the executive branch agency "was to render and solicit legal advice," or that confidentiality was maintained. *Id.* Plaintiffs also expend many pages arguing that the public declaration is insufficient to establish the applicability of Exemptions 1 and 3. *Id.* at 15-20. These arguments are entirely without merit.

Contrary to Plaintiffs' contention, Pls.' Opp. at 12, the Colborn Declaration amply establishes that the document is protected by both the deliberative process and the attorney-client privileges. Mr. Colborn explains that the OLC memorandum is both predecisional and deliberative because it is a legal advice memorandum provided by OLC to an executive branch agency. Colborn Decl. ¶¶ 7, 16. He explains that the primary purpose of OLC is to provide legal advice to its executive branch clients, and that OLC produced the advice memorandum at issue in response to a request for legal advice from its agency client. *Id.* ¶¶ 2, 12. He also avers that the document was maintained in confidence. *Id.* ¶¶ 3, 12.

The Government's declarations also demonstrate the applicability of Exemptions 1 and 3. Given the classified subject matter of the OLC opinion, it is not possible to describe it in detail on the public record. However, Mr. Colborn explains that the document contains information marked as classified by another executive branch agency, and is therefore derivatively classified. *Id.* ¶¶ 19-20. And the reasons for that classification are set forth in detail in the classified declaration submitted for the Court's *ex parte* and *in camera* review.

The remaining information that Plaintiffs complain is missing from the public declaration is itself exempt from disclosure because it is classified, statutorily protected and/or privileged. It is well established that an agency need not disclose exempt information in order to justify its withholdings under FOIA. *See New York Times v. DOJ*, 758 F.3d 436, 440 (2d Cir. 2014) (citing *Hayden v. NSA*, 608 F.2d 1381, 1384-85 (D.C. Cir. 1979)). In cases, like this one, that involve classified national security information, the Government is entitled to rely on classified declarations to meet its burden on summary judgment. *See, e.g., ACLU v. Office of the Director of Nat'l Intelligence*, No. 10 Civ. 4419 (RJS), 2011 WL 5563520, at *12 (S.D.N.Y. Nov. 15, 2011); *see also ACLU v. DOJ*, 681 F.3d 61, 70 (2d Cir. 2012) (in the FOIA context, "[w]e have

consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 927 (D.C. Cir. 2003)).

## CONCLUSION

Based on the foregoing, the Court should grant the Government's motion for summary judgment, and deny the Plaintiffs' cross-motion for summary judgment.

Dated: New York, New York
May 5, 2016

                PREET BHARARA
                United States Attorney for the
                Southern District of New York

By:    /s/*Arastu K. Chaudhury*
       ARASTU K. CHAUDHURY
       Assistant United States Attorney
       86 Chambers Street
       New York, New York 10007
       Telephone: 212-637-2633
       Facsimile:  212-637-2750
       arastu.chaudhury@usdoj.gov